May it please the court. My name is Stephanie Richards. I'm a law student from Gonzaga University. I'm certified for student practice in this court and I'm supervised by Professor Rick Eichstadt of Gonzaga University Legal Assistance Clinic. I'd like to reserve three minutes for rebuttal if I may. All right, please watch your time. Thank you. We represent the appellants in this action, Don Hamilton, Lorna St. John, Quentin Wood, and the Prairie Protection Association. They're a group of neighbors who live and farm alongside Bigelow Gulch and North Forker Road in Spokane County, Washington. This roadway is eight miles of a two-lane road that goes through the countryside. There are three fundamental points that I'd like to discuss with the court today. The first is this case is important because it goes beyond Spokane County, Washington. This case is an example of federal highway administration relying on a cramped interpretation of their own regulations. When they lay down new highway alongside or near an old highway, they then argue this circumvents their need to do a full environmental impact statement and instead produce an environmental assessment. I have a question. On a basic level, you argue that FHWA's regulation 23 CFR section 771.115 requires F, I don't, do we call it something? Federal Highways. What do we say? Federal Highways. Well, Federal Highways, that's easier than doing that. It requires them to show that its decision is not to prepare an EIS was not arbitrary and capricious. It seems to me you're asking for a new rule to alter the standard of review under the APA, which requires you to show that the agency's decision was arbitrary and capricious. So you seem to be Well, tell me, well, what's the standard of review? The standard of review is arbitrary and capricious. That you have to show it. Under the APA to show that the decision. They don't have to show it wasn't, you have to show it was, correct? Agreed, Your Honor. Okay. Just want to get that straight because the burden of proof, you know, who's got the burden at the standard of review could be pretty significant in cases. Absolutely. And in accordance with law or in accordance with the procedures that are required by law. In this case, the Federal Highways issued an environmental assessment. This environmental assessment was inadequate as it only analyzed two options, a no change option and their preferred option. And third, we're going to discuss how the environmental assessment was demonstrably inadequate because this court heard what our clients had been saying all along, that the environmental assessment missed key environmental considerations, including the wetland at the corner of Bigelow Gulch and Old Argonne Road. It was not on the list of analyzed wetlands. What's the status of that? Currently, Your Honor, the current status from the time of this appeal, there have been quite a few changes. They're outside the scope of what's before the court today. Ms. Waldrop from representing Federal Highways may be able to answer that question better. But was the wetland that you said was missed, was that part of the project area? The wetland is located right in the heart of the project area. It's the entire road corridor and it's right in the middle. Of the one that you said was missed? The wetland is not on the list of impacted wetlands in the project area. So you're saying that the one that was missed is right in the middle of the project area? The project area is an eight-mile long two-lane road and it is right on that road. It's right in the middle. So the highway is going to be built through the wetland? Is that what you're saying? The road currently exists and it's off to the side of that road and it is within the corridor of the project. So currently, the Bigelow Gulch and Forker Road, there's two lanes with one to three foot paved shoulders on either side. And the new roadway, the project that we're discussing today, costs $52 million and it more than doubles the footprint of that road to a divided four-lane highway. That pretty typically happens when you move from two lanes to four lanes. Yes, the divided with the left turn lanes and the right slow down lanes to keep traffic flowing. And the key point is that almost 30% or about two and a half miles of this project will be the four-lane highway on a new location, which goes to the regulation that we were discussing. The appellee appears to have issued what's called a mitigated FONSI. In this case, impacts to aspects of human environment like wetlands may have been significant absent mitigation, but the agency concluded that with mitigation, the impacts would be less than significant. Why was that decision unreasonable? The mitigation impacts discussed are for wetlands, which is one factor of the entire impact that this roadway project will have. We're going through rural neighborhoods. There will be a four-lane highway moved close to homes. There'll be new road put through hills that are currently covered in forest in some places. There's farmland that will be impacted. So that's just one aspect of the project is the wetland mitigation. So, but why was that unreasonable? The wetland mitigation in and of itself is not unreasonable. So the mitigated FONSI is not unreasonable? The impact on the wetlands, the mitigation. We argue that the FONSI, the decision to issue the FONSI is unreasonable because what our clients have wanted is the EIS to be issued in the first place. Well, we know what you want, but you have to, but you've got to show that an agency's decision was arbitrary and capricious, and then I asked you on the mitigated FONSI, why was it unreasonable? So it can't just be what you want. The FONSI was a result of the environmental assessment. The decision to produce the environmental assessment we believe was arbitrary and capricious because it doesn't follow the procedures that are laid down by law. But the procedure I think that you're talking about says normally, and you argue that that makes it mandatory, and the word normally is not the same as shall or... Normally is not the same as shall. Normally means what you do in the normal course of business, what you do most of the time, what you do usually. What we have is a situation here where the, what is unusual is occurring. But don't you argue that normally means mandatory? You argue that it was mandatory that they did it, but I think you've got to get past normally. Normally indicates that that's what's going to happen most of the time, and the regulation provides a list of things that normally will require an environmental impact statement, and one of those things is four lanes of highway on a new location, and that's exactly what we have here. We have a major project that includes that aspect on that list that is provided within the text of the statute. So our argument is that to the, what's I guess I'm just kind of pointing out what I say are, first I discuss the standard of review, which I think you had it turned upside down, then I think that normally the way that you argued it was trying to make it mandatory, but... I wouldn't say that normally is mandatory, but I would say normally happens more often than not. And then I have another issue that these are all things in terms of, in your reply brief you argue that significantly beneficial impacts require preparation of an EIS, but you devoted only one sentence to this point on page 19 of your opening brief, and it was in the, so the government did not address this issue in the answering brief. Have you waived that issue? The issue regarding? Beneficial impacts. Beneficial impacts, well that... You don't set as a separate argument in your opening brief, and then you, you know, usually you don't get to wait to your reply brief, and then say that, you know, then fault someone for not addressing it. They get to say that you waived it. So why don't you waive that issue? You have one sentence in your opening brief about beneficial impacts, and I think it's couched in the facts. The beneficial impacts of the project on the... Well, you argue that the significantly beneficial impacts require preparation of an EIS. Say one line in your facts, not, it's not a separate argument, but then you develop that in your reply brief. Well, that doesn't give, the government can't respond to that, so why isn't that issue waived? Your Honor, I would, I would respectfully say that I don't know the answer to that question. It may, in fact, be waived if it was not fully developed in the, in the opening brief, which, unfortunately, I, I was not working on that. It's gone on a long time. It has been going on a very long time, Your Honor. A lot of, a lot of students. A lot of hands in the pot. Okay, all right. Thank you very much. Can I ask about the old Argonne wetland? Mm-hmm. And assuming, based on this record, that it's not in the EA, what's the impact of it? The impact of not including... It's omission. Of, yes, the omission. It goes to show that this environmental assessment was, did not consider a sufficient range of alternatives, and it didn't consider all of the facts. It goes... Is it something more than the EA says we considered the impact on all wetlands, and you're pointing out that it doesn't specifically address the one at the intersection of Bigelow Gulch and Old Argonne? Yes. I must say, having spent some time in France, I have a little problem calling Argonne old in the new world, but I guess there's a new Argonne Road and an old Argonne Road. There's a current Argonne Road, and this is the old Argonne Road. Yes, yes, Your Honor. Help me out on that. The, the environmental assessment is flawed in a number of ways. Only considering two options goes against the intent of the environmental assessment process, but this wetland really points out how facts were missed. It is in the record that the neighbors brought this wetland to the Federal Highway's attention. It's in the record. That's my concern that I have is the declarations that talk about Bigelow Gulch Road and Old Argonne Road being missed are outside the administrative record. They are outside the record, and this is exactly why this wetland should have been included in the analysis, because now we're having this kind of side conversation about whether or not the improvements to the, to the roadway or to stormwater or to pollution will or will not impact this wetland. We don't know. Isn't our review limited to the documents that were generated during the administrative process? How can we consider this extra record evidence? At the district court level, the Eastern District of Washington chose to look at those documents, said that they were not considered, did somewhat refer to them in its order. The, the district court may consider extra record material if it falls into some narrow categories, and one of those is if admission is necessary to determine whether the agency has considered all relevant factors and explained its decision. That's from Ranchers Cattlemen Action Legal Fund, the U.S. Department of Agriculture. Did the district court make a finding that this extra record evidence was necessary to its decision? The district court did stated it did not consider that information in its decision, did refer to it slightly later in the opinion, but stated that it was not considered in the decision. So where does that leave us in terms of whether or not we should consider this extra record information if it was not included in the administrative proceedings and the district court issued any reliance on it? What do we do with it? Well, this court does review the decisions of the lower court de novo, so we do have all of that extra record material as part of the lower court record, so to speak. Can we make the finding at this level that the record needs to be augmented? I believe you can, Your Honor. The case says that. That on appeal, we can make the determination that the administrative record can be augmented. I'm running low on time, so if I could answer that question in rebuttal, I would appreciate it. Thank you very much. All right, thank you, counsel. We'll hear from the government. May it please the court, my name is Vanessa Waldreth on behalf of the Department of Transportation Federal Highways. Good morning. Good morning. The Bigelow Gulch Transportation Project is needed to improve traveler safety and vehicle capacity. Just speak up a little, counsel, you're a little. Thank you, Your Honor. Thank you. It's a needed project to improve vehicle and capacity on a collision and fatal collision rate. So nothing's been done yet, am I to assume that it hasn't been built yet, because that would make this move, right? Some efforts have been made along the project that's been divided into six phases, and there has been some work done on some of the early phases, and critical to what is at issue here regarding the purported wetland. That area was done as a separate project outside of this project environmental assessment, and I can directly address that issue right now. I guess you need to address that in terms of why doesn't that undermine this decision, because what the appellants are claiming is that that wetland should have been addressed, and therefore that's why it undermines the process that you did and makes it arbitrary and capricious. So what consideration was given, or why wasn't it necessary to give any consideration? Yes, Your Honor. So the 2007 final environmental assessment had extensive wetland analysis, as can be seen in the environmental assessment sections. Did that extensive analysis include Bigelow, Gulch Road, and Old Argonne Road? It does not, Your Honor, and the reason that that wetland is not included is because that wetland is in a portion of the overall eight-mile tract of the project that was completed in a separate project by Spokane County in 2005 with separate funding and its own independent utility requirements, because the Argonne, not Old Argonne, the Argonne and Bigelow-Gulch intersection had increasing level of service needs and Spokane County was able to achieve separate grant money to build out that project area. So separately, Spokane County expanded the Bigelow-Gulch and including the Old Argonne Road intersection with Bigelow-Gulch as well. That's approximately a 0.5 half-mile area along this Bigelow-Gulch transportation project. So because that was separately done prior to the 2007 final environmental assessment and all of that expansion over this potential wetland area on the southwest corner of Old Argonne Road and Bigelow-Gulch Road, that project went through its own state-level environmental assessment, and it's been built, it's done, and the Bigelow-Gulch project moving forward is not building out that area any further. And there's a few citations in the record that I can point you to that discuss this Project 3A. It's called Phase 3A because it's divided into six phases and this is part of Phase 3. And one site in the record is BG 1945, which discusses how this intersection has its independent utility, logical termini, and Federal Highways was aware of the Spokane I believe it is 12, Your Honor. Oh, it's not in the excerpts of record. Pardon me. I thought in the volumes within the administrative record it's divided up that way, but it's not in the excerpts, Your Honor. Okay, so then can you tell us is there anything in the excerpts of record that we have before us that confirms what you're talking about? So in the excerpts of record, it is on page 50, the supplemental excerpts, page 57. And it is a footnote that talks about how a portion of the Phase 3 was completed in 2005 by Spokane County. Okay, let's see. Yeah. Okay, so it's your position since that had already been studied, it had already been done, and that the project at hand here didn't change any of that, that nothing else had to be done on Correct. The project area, the extensive wetland mitigation was done, but this area, it's reasonable that Federal Highways did not include a wetland area in an area that had already been built, and so therefore would not have further impacts. And also important to this Court's analysis of this potential missing wetland, which I think is a reasonable not inclusion by Federal Highways, is that the reason this appeals before you today in 2016 rather than 2010 or closer to the 2007 revised environmental assessment final time period is that there were other issues going on with the project that delayed the buildout, and that provided ample opportunities for Federal Highways to continue to evaluate whether the project is compliant with the NEPA regulations. And this, the triggering event for this appeal was the issuance of a re-evaluation by Federal Highways in March of 2015. And that re-evaluation does include this wetland and continues to find no significant impact for the project area. And I raise that as even if it was an error on the side of Federal Highways to not include it, it was a harmless error because as was reasonably expected at the time, there was not an impact at that wetland, of that intersection to a wetland, and the entirety of the project still does not have a finding of significant impact. And the burden on appellants is to show that there could be a significant impact that wasn't properly addressed in the environmental assessment. And that has not been shown by appellants here. Let me ask you on, I asked appellant about a waiver issue on beneficial impacts that, so what's your position on their argument that they make in their reply brief that's not really developed in their opening brief? I do believe the beneficial impacts argument has been waived. I also think that it is, even if it was not, is not critical to the overall decision here today because presumably every project has beneficial impacts. I agree with you on that, but why can't significantly beneficial impacts require an alternative? Is comparing the significantly beneficial impacts of alternatives just another way of comparing relative detrimental impacts or alternatives? In other words, if one alternative is more beneficial than the other, then selecting one over the other would have a detrimental effect, wouldn't it? So it's kind of like it's two sides of the same coin. Well, a selection of an alternative needs to be reasonable. So the standard is not kind of a sliding scale of what are the most benefits versus the least benefits. Certainly that's a reasonable thing to consider by Federal Highways in terms of wanting safety benefits, wanting level of service improvements, and having a range of options that meet the proposed goals and benefits of a project. The requirement of a environmental impact statement considers all the significant factors under NEPA. One of them can be beneficial impacts. And so in order to evaluate significant beneficial impacts, it needs to be addressed in the environmental assessment here about whether or not that is significant. And Federal Highways did have a thorough analysis of the benefits of the project. And the analysis, I think, supports their ultimate conclusion that this project is not having significant impacts on the human environment. I know that it just because it costs you more in the long run doesn't mean that you have to do an EIS, but it certainly seems in this case with the years of I don't know that an EIS could have been more expensive than how much you've all litigated the EA and the mitigated Ponzi. The expense is not clear. There's certainly been a lot of litigation on this. The standard for the environmental assessment here is whether or not it reasonably supports the determination. And the appellants here have not shown what would an environmental impact statement provide that is not addressed in the environmental assessment. And here, looking at the Federal Highway regulations, I think that it's important to see that we are in a class three category that looks at the proper determination of whether or not an EIS is required. It requires, actually, the preparation of an environmental assessment to determine whether or not ultimately an EIS is needed. And in that class three universe, that's the correct step under NEPA to move forward with an environmental assessment. And that was done here and the determination was made of no significant impact. Well, so you, your client applied several screening factors in order to justify not analyzing several alternatives in detail. Are these screening factors elements of the project's purpose and need or are they independent factors that Federal Highways use to avoid analyzing alternatives that would meet the project's purpose and need? It's kind of hard to pull those two apart. Well, in chapter three, that's dedicated to the alternatives analysis, the final environmental assessment here built on the draft environmental assessment in 2006 and really dug in to try to provide more explanation for why other alternatives that were considered early on in the project were not appropriate. And that addressed level of service, which is Washington State Department of Transportation guidelines, engineering issues, cost issues. So all of those factors were reasons for why other alternatives that are addressed in chapter three of the environmental assessment were ultimately not decided to be fully addressed. I guess what I'm asking you is if the screening cases that support the view that an agency can use factors beyond purpose and need to weed out reasonable alternatives, what's your best case on that? My best case other than purpose and need? Well, Native Ecosystems Council is a Ninth Circuit case that goes into how a no action and referred action alternative doing in-depth analysis of those two is sufficient under the environmental assessment NEPA regulations. And that you don't need to analyze every possible viable alternative or you need to explain why they are not the best alternatives for the situation. And so the regulations under 40 CFR section 1508.9 require a brief discussion of alternatives for an environmental assessment. And here we have far beyond the standard of Native Ecosystems of looking at only the no action and preferred action. We also show the step through of each of the earlier raised alternatives and why they were not found to be appropriate. And they go beyond simply the purpose and need because they also address level of service, engineering issues, cost issues that are all safety and safety factors that are within the reasonable expertise of the NEPA. You don't have to use all your time. All right. Thank you, Your Honor. Council. Rebuttal. Thank you, Your Honor. A number of points to go over quite quickly. The alternatives that appellees are discussing in the environmental assessment, as you pointed out, they were pre-screened out. The purpose of the environmental assessment is to provide the environmental analysis of the viable options. And the court, this court, got that right. Isn't part of it to determine whether or not it's a viable option? If it's not viable, what's the point in doing an environmental assessment? Any project option that meets the stated goals of the project is considered to be a viable option. Isn't that the determination for the highway administration to make? If it's viable or if it meets the goals? There are, there were many projects that were put out there that stated that they met the goals and they all deserved an environmental assessment, to be part of that environmental assessment. This court has stated in Western Watersheds v. Abbey, for example, that two alternatives in an environmental assessment is inadequate, especially when one is a no-impact option, which is not a truly viable option because there are true safety issues that are going on with this road. To address your question earlier, Your Honor, I did misspeak or misunderstand your question. The wetland was identified in the record. It's at volume three of the excerpts of record, page 335. This was an email that was delivered to Federal Highways that discussed the existence of this wetland. All of the information on the update to the project, the section 3A, that's all, as well, extra record material for which I don't have a record site for you. The other important part that I'd like to discuss regarding this wetland being in section 3A that was done, you know, 10 years ago, is that significance is a key part of the NEPA process. And I see that I'm over my time, Your Honor. Sum up, please. Yes. Your Honor, we do believe that an environmental impact statement was required here based on the plain letter of the law and that the EA was inadequate based on the fact that it only analyzed two options and failed to analyze the wetlands. And we ask that you reverse the court below. Thank you. Thank you. And on behalf of the court, we thank the clinic for appearing in here today for this argument. Thank you very much to all counsel. The case just argued is submitted for decision by the court. You both did a good job. And, you know, it's not easy to ever come and argue before the court. But as a if otherwise, that doesn't that does not portend in any way on results. We don't speak to results, but you both did an excellent job and we appreciate pro bono work. Thanks for the opportunity. Thank you.
judges: Hawkins, Rawlinson, Callahan